E. LEIF REID,
Nevada Bar No. 5750
DARREN J. LEMIEUX,
Nevada Bar No. 9615
LEWIS AND ROCA LLP
50 West Liberty Street
Suite 410
Reno, Nevada  89501
(775) 823-2900
(775) 823-2929 (fax)

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SPEED TECHNOLOGIES, LLC, a Delaware limited liability company, | CASE NO. 3:11-cv-00180-LRH-(RAM) |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| vs. | |
| BULLY DOG SALES & DISTRIBUTION, LLC, an Idaho limited liability company; BULLY DOG TECHNOLOGIES, LLC, an Idaho limited liability company; DOES 1-10; and ROE CORPORATIONS A-Z, inclusive, | |
| Defendants. | |

Plaintiff Speed Technologies, LLC ("Plaintiff"), by and through their counsel of record, Lewis and Roca LLP, hereby files its Opposition to the Defendants' Motion to Dismiss pursuant to FRCP 12(b)(2).  This Opposition is supported by the attached Memorandum of Points and Authorities, all papers and pleadings on file herein, and any oral argument this Court may wish to consider.

**MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## I.   INTRODUCTION

Defendants' motion to dismiss this action for lack of personal jurisdiction makes two blanket arguments: (1) that they do not have sufficient contacts with the state of Nevada to confer this Court with general personal jurisdiction over them; and (2) that this Court does not have specific personal jurisdiction over them based on the relationship between the Defendants' contacts with the state of Nevada and the Plaintiff's claims for relief. As set forth herein, both of these arguments are severely misplaced and lack merit as the Defendants are subject to both general and specific personal jurisdiction in Nevada. Defendants' motion should be denied.

## II.   RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A.   The Plaintiff's and Defendants' Businesses

"In Nevada the name Harrah is associated with casino success. Equally synonymous, albeit less known, is the family's tie to motor sports." See, *Reno off-road racing team Speed Technologies has turned out to be a family affair*, Nevada Magazine, March/April 2009, attached hereto as **Exhibit 1**. "Established in 2006 Speed Technologies is owned by John Harrah and headquartered in Reno, NV," formerly located at "Rancharrah" (6001 Talbot Lane, Reno, NV) and currently located in south Reno (9716 S. Virginia St, Reno, Nevada). See "*Meet the Speed Tech Crew This Week in Reno*," dated March 25, 2008, attached hereto as **Exhibit 2**.

In fact, Reno is not just the location of Speed Tech's headquarters, it is its sole and preferred place of business for Nevada's deeply rooted Harrah family:

> We've been working hard to make Speed Technologies one of the top
> racing teams and we are proud to be based in Reno. . . . Owned by John Harrah, a
> Nevada native son, Speed Technologies has slowly been building momentum
> over the last two years with finishes and wins in some of the most grueling off-
> road challenges the sport has to offer.

Id. In 2008 alone - only two years after Speed Tech was created - it won the prominent SCORE Baja 1000, and held top place finishes in a number of noteworthy races in Nevada, including the

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

75803.1

TSCO Vegas to Reno, and second-place finishes in Mesquite's (Nevada) Silver State 300 and the Henderson's (Nevada) Fabtech Desert Classic." See **Exhibit 1**.

In general, Speed Tech's business is twofold: (1) it manufactures, sells, repairs, and rents off-road motorsport vehicles; and (2) it races those vehicles by operating a professional motocross racing team. See http://www.speed-technologies.com. Speed Tech's motocross trucks include the "SuperLite Truck," the "Class 1 Unlimited Buggy," the "Unlimited 2 Truck," the "Unlimited Lite Truck, and the "Trophy Kart." Id. Its racing team is "one of the largest and foremost off-road race team[s] in the United States and Mexico," competes in a litany of high-profile races and racing series, and is supported by a full-time staff, additional chase and safety crews. Id.; see also *Speed Technologies Readies to Race in the Bilek Racing Silver State "300,"* dated September 25, 2008, attached hereto as **Exhibit 3**.

Idaho Defendants Bully Dog Technologies' and Bully Dog Sales & Distributions' (used synonymously herein as "Defendants" or "Bully Dog") business essentially started in 1998 when they "patented a safe and effective propane injection system to enhance diesel engine performance." See http://www.bullydog.com/about.php, attached hereto as **Exhibit 4**. Defendants quickly became "a leading U.S. manufacturer of performance products for diesel pickups," and expanded its business to performance products for gasoline powered vehicles as well; ranging from "outrageous performance on the race track to improved fuel economy driving down the highway." Id. Today, Bully Dog is nationally recognized in the automotive performance industry: "in the past 12 years, Bully Dog has been first to market with vehicle-specific products and applications over 100 times while also being awarded many awards for [their] revolutionary products." Id.

Defendants maintain an *interactive* website - www.bullydog.com - in which they, among other things, market and sell their products (including apparel and accessories) and guide and direct anyone to the nearest "***Bully Dog Dealer***" or "***Preferred Dealer***" by entering their zip code into the "***Dealer Locator***" feature. See http://www.bullydog.com/dealer_locator.php, attached hereto as **Exhibit 5**. Importantly, the Dealer Locator feature directs citizens of Nevada - by

entering their Nevada zip code - to approximately forty (40) Bully Dog Dealers and/or Preferred Dealers located in various parts of Nevada.[1] Id. The Defendants' website also has a "Dealer Login" component, which is password restricted and only available to the dealers the Defendants have an agreement with. Id., at http://dealers.bullydog.com/.

Entering Reno, Nevada zip code 89509 into Defendants' Dealer Locator feature, and restricting the search to just 50 miles, returns twelve (12) "Local Bullydog Dealers for 89509 [Nevada]" alone. See Local Bullydog Dealers for 89509, attached hereto as **Exhibit 6**. The results include the dealer's name, location, address, directions, and whether they are a "preferred" dealer and/or offer Defendants' "Tri before you Buy" program. Id. These dealers are Nevada business that have an agreement or an intentional affiliation with the Defendants to sell and market their products as evidenced by the attached receipt for a Bully Dog t-shirt recently purchased at Bully Dog dealer Summit Racing Equipment in Sparks Nevada (960 East Glendale Ave). See Receipt from Summit Racing, attached hereto as **Exhibit 7**.

Defendants are also a member of the Specialty Equipment Market Association ("SEMA"); a trade association that "[e]very year . . . presents an enormous trade show in Las Vegas," Nevada, which is known as "the premier automotive specialty products trade event in the world." See Specialty Equipment Market Association article, *About SEMA*, attached hereto as **Exhibit 8**; see also http://www.sema.org/. Defendants attend the SEMA Show in Las Vegas, Nevada, every year to promote and present their products to thousands of prospective buyers, for which they have received a number of awards. See e.g., *Bulled Elegance Wins Design Award at 2003 SEMA Show*, The Auto Channel, attached hereto as **Exhibit 9** (Winner of the 2003 "Ford Design Award."); see also *SEMA Announces New Product Showcase Award Winners*, SEMA News, attached hereto as

---

[1] Defendants' website also allows its users to utilize "[t]he Update Agent," which is "an online software program created to update electronic Bully Dog Products." Id. Defendants' website states that its free "Update Agent" software program is "the most automated and comprehensive update software available in the automotive aftermarket." Id. (Manual at p.2 ). Similarly, the website offers "Performance Testing Software" that "allows you to download logged performance tests from your WatchDog and output your performance results onto your PC. Id. Defendants' website also has interactive technical support, including a feature that allows anyone to "Chat With A Tech Online." Id.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

**Exhibit 10** (Winner of the 2010 "Best New Interior Accessory Product.").[2]  Notably, at the 2006 SEMA Show in Las Vegas, Nevada, Defendants hosted a special event for its Dealers, at which they unveiled new products, provided product training, gave away a "Chevy S10 race truck" and other "prizes to every one of its dealers," including casino chips.  See *Bully Dog Technologies Gives Back To Its Dealers*, attached hereto as **Exhibit 12**.

In addition to their website, Defendants also use various social media websites, such as Facebook and Twitter, to promote their products, services, and sponsorships.  See Bully Dog Twitter, at http://twitter.com/#!/Bully_Dog relevant portions attached hereto as **Exhibit 13; see also** Bully Dog Facebook, at http://www.facebook.com/WeAreBullyDog.  The following are some of the Defendants' postings on their Twitter account (and Facebook) around the time of the 2010 SEMA Show in Las Vegas, Nevada:

- October 27, 2010, "attention Bully Dog dealers check out this SEMA promotion . . ."

- October 28, 2010, "The Bully Dog crew heading for the SEMA show in Vegas."

- November 1, 2010, "Bully Dog Event - SEMA booth 21360 Las Vegas, NV tomorrow."

- November 3, 2010, "Top ten things from SEMA over the first couple of days at the show."

- November 3, 2010, "Good crowd this year, big increase of real people."

- November 3, 2010, "The Bully Dog booth location is PERFECT! #21260 in the Performance Hall right around the corner from Ford."

- November 3, 2010, "Having Bully Dog product in vehicles in the Ford and Chevy displays."

- November 3, 2010, "Amazing weather is Vegas, low 80s all week."

- November 3, 2010, "Having over 50 vehicles running Bully Dog product at the show."

---

[2] See also 2009 SEMA: Carformance Best Looking Mustang of the Show, attached hereto as **Exhibit 11**  ("Bully Dog unveiled their new K9 Cobra in Las Vegas last week, an amazing Ford GT500 Mustang . . .").

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

75803.1

- November 3, 2010, "Watching the Lucas Oil off road demos all the big drivers are here [SEMA] including the Blanco Basura/Bully Dog truck driven by Bryce Menzies."

Id.[3]  In addition to being in Las Vegas, Nevada for the 2010 SEMA Show, the Defendants were also there as a sponsor of the Lucas Oil Off Road Racing Series ("LOORS") event at the Las Vegas Motor Speedway, as evidenced by their "tweet" on November 5, 2010: "**Bully Dog Event - LOORS Las Vegas Motor Speedway, Las Vegas, NV tomorrow**." Id. (emphasis added); see also *Team Renezeder Prepared for Las Vegas Season Opener*, DirtNewz.com, (listing 2010 LOORS' Race Schedule), attached hereto as **Exhibit 14**.

In recent years, Defendants' business has expanded from being a manufacturer/distributor of performance parts for various motocross vehicles to sponsoring a number of motocross/off road racing events, drivers, and series, such as the Lucas Oil Off Road Racing Series ("LOORS"). See e.g., *Bully Dog signs sponsorship deal with Totally Off Road Radio*, attached hereto as **Exhibit 15** ("Over the last two years we have gotten very involved in off road racing, from the CORR series to some desert racing."). A number of the races are held in Nevada annually, and in addition to sponsorships, Defendants have filmed/sponsored commercials, television shows, and radio spots in Nevada that have covered the Nevada events. See e.g., *Bully Dog Becomes Official Performance Product Sponsor* (2008), attached hereto as **Exhibit 16**.

**B.     The Parties' Business Relationship and Contract**

Defendants and Plaintiff first started doing business together in 2008, when the Defendants were an associate sponsor to the Plaintiff's Pro-Lite truck and driver Chuck Dempsey. See *Bully Dog announces their CORR Super Team*, dated April 10, 2008, attached hereto as **Exhibit 17**; see also Affidavit of Kevin Singleton, attached hereto as **Exhibit 18**. At the time, Plaintiff was seeking to expand its presence in the off road racing industry and assembling a high quality racing team for the Championship Off Road Racing Series ("CORR"), which the Defendants were the

---

[3] Similarly, on March 30, 2009, the Defendants posted "***Race season begins for Bully Dog, follow us in the LOORRS short course series that starts April 4th and 5th in Primm, NV,***" which is the one of the events at issue under the parties' contract. **Exhibit 13**; *discussed Infra.*

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

75803.1

"Official Performance Product Sponsor" of.  See *Speed Technologies Expands into CORR Racing*, dated April 15, 2008, attached hereto as **Exhibit 19**.

The 2008 CORR tour that the Defendants sponsored consisted of eight (8) racing events, two (2) of which took place in Las Vegas, Nevada, as well as an event in Primm, Nevada.  See *It's Official: 2008 CORR Tour*, dated January 14, 2008, attached hereto as **Exhibit 20**.  Like all professional off-road racing series, this schedule was announced well in advance of the season's opening race on May 25, 2008.  Id.  Kevin Singleton met with Mike DeFord, then marketing manger for the Defendants, at the races in Nevada, as well as at the other CORR races, as the Defendants sponsored Plaintiff's Pro-Lite truck and driver Chuck Dempsey.  **Exhibit 18**; see also *Racing West*, dated September 12, 2008, attached hereto as **Exhibit 21**.

The 2008 CORR series was broadcasted on NBC, in which Plaintiff's driver Chuck Dempsey raced the Pro-Lite truck in places such as Primm, Nevada, in which Plaintiff's truck featured a "graphics package designed by Bully Dog" that included the Defendants' name and logo.  See *Bully Dog pushes hard in Primm [NV]*, dated May 20, 2008, attached hereto as **Exhibit 22**.  Defendants had other sponsorships and contacts at this race, including the "Bully Dog Nissan Titan Pace truck," and the "Pro 2 race truck built by Baldwin racing and sponsored by Bully Dog." Id.  Defendants sent invoices to Plaintiff's business in Reno, Nevada, for their 2008 services, which Plaintiff paid in full.  See Speed Technologies, LLC, Bill Payments for Bully Dog Sales & Distribution LLC, attached hereto as **Exhibit 23**.

Towards the end of the 2008 racing season, Mike DeFord visited the Plaintiff in Reno to discuss the Defendants' pitch for a much more aggressive sponsorship and services agreement for the 2009 racing season.  See **Exhibit 18**; see also Complaint, at p. 3.  The Defendants knew that the Plaintiff was designing and building a new type of off road racing truck - the SuperLite Championship Truck ("SuperLite") - and wanted to be the title sponsor for it for the 2009 season. Id.  The Defendants also knew that Plaintiff wanted to compete in LOORS, which was taking over the CORR series, and represented that the Plaintiff's SuperLite would not be able to compete in LOORS without entering into a sponsorship and services agreement with the Defendants.  Id.

In early January 2009, Mike DeFord and the Defendants' then CEO, Allen Rupp, requested that Kevin Singleton and Chuck Dempsey meet them in California to discuss the Defendants' proposed sponsorship and services agreement. See Email, dated January 8, 2009, from Allen Rupp to Kevin Singleton ("[t]hanks for meeting us in California!"), attached hereto as **Exhibit 24**. At this meeting, Defendants again made a series of representations in effort to induce Plaintiff into entering into a sponsorship and services agreement. **Exhibit 18;** see also Complaint, at pp. 3-7. Defendants also provided the Plaintiff with a prospectus, which detailed "Bully Dog's Interest in Speed Technologies." Id.; see also Prospectus, entitled "Speed Technologies In association with: Bully Dog," attached hereto as **Exhibit 25**.

The prospectus was broken down into two main categories: (1) the services Defendants would perform for the Plaintiff's racing team in 2009; and (2) the services Defendants would perform for Plaintiff's SuperLite truck in 2009. See **Exhibit 25**. With respect to Plaintiff's racing team, the Defendants represented that they would, among other things, create a website following "the adventures of the Speed Technologies racing team"; install in-car cameras that would be used in televised races; bring new sponsors to the Speed Tech's short course and desert team [i.e., Best in Desert and SCORE Desert Racing]"; design and manufacture promotional products that would be given away at "Speed Technology related events and races"; facilitate Plaintiff's new "Arrive and Drive" rental program at the races; and use Speed Tech's name and logo in all marketing materials. Id.

Defendants also represented that they would supply Bully Dog products for Speed Tech's vehicles and redesign their (Bully Dog) vehicles to include Speed Tech's name and logo, which would be "shown at SEMA [Las Vegas] and other shows" in 2009. **Exhibit 25**. Furthermore, during the racing season, Defendants would also provide custom tuning, parts, and products for Speed Tech's vehicles, create, print and distribute thousands of posters, cards, and stickers, as well as "[a] special line of R/C trucks [that] will be designed and manufactured . . . replicas of the Speed Technologies racing vehicles." Id. Moreover, Defendants would "develop an in-store, market-appropriate Point of Purchase (POP) display, [which would] be used to promote the Bully Dog product line and will feature a Speed Technologies driver, and the Speed Technologies logo

will be clearly visible." Id. Thus, these services could not be performed at Defendants' business in Idaho; rather, they had to be performed at the actual races in 2009.

With respect to the Plaintiff's SuperLite truck, Defendants similarly represented that they would have the truck included in the 2009 LOORS (as well as the Desert racing series), schedule various celebrity drivers for specified races, "serve as the agency for the Super Lite . . . [including] all media/PR relations, ad campaign placement and management, web management, series and driver promotions," provide a "VIP" hospitality tent at each round of the racing series, sell and manage title sponsorships for Plaintiff's "Arrive and Drive" program, "present a 2009 H3 Hummer to Speed Technologies/Super Lite," and "build and maintain a web site dedicated solely to the Super Lite trucks and the series." Id. Defendants would also provide SuperLite significant media coverage, including commercials, television shows, video games, and toy trucks replicating the SuperLite. Id. Lastly, Defendants would create and manage Plaintiff's websites (including e-commerce), product distribution (splitting "all clothing and merchandise profits with Speed Technologies") and build a Bully Dog/Speed Tech display for the 2009 SEMA Show (in Las Vegas, Nevada). Id.

The parties continued to meet and discuss the proposed agreement, with the Defendants visiting Plaintiff in Reno, Nevada on at least two additional occasions. **Exhibit 18**. On or about January 16, 2009, Plaintiff and Defendants entered into the sponsorship and services agreement (the "Agreement") for the 2009 season, including the new LOORS short course series. See Email and Agreement, attached hereto as **Exhibit 26**. In short, Plaintiff agreed to pay the Defendants $1,435,740 under the Agreement for the Defendants' sponsorship and services, which the Defendants represented would be offset by $1,177,220 in revenue the Agreement would generate for the Plaintiff. Id.; see also Complaint, at p. 4; **Exhibit 18**.

The Agreement's revenue generating component, coupled with Defendants' representation that Plaintiff could not get into LOORRS without paying a $350,000 sanctioning fee to the Defendants, who would tender that money to Lucas Oil, were the main reasons Plaintiff agreed to enter into the Agreement. **Exhibit 18**. In fact, the revenue Defendants' represented that the

Plaintiff's would generate from the Defendants' services was to offset the Plaintiff's cost of operating its business: "Harrah estimates the annual cost of running Speed Technologies is close to $1 million, an expenditure offset by sponsorships. 'Our new sponsor, Bully Dog Technologies, stepped up to the plate with a really good package for us . . . . At the end of the year we'll only have to spend about $2,000 [sic].'" **Exhibit 1**.

Thus, the vast majority of the Agreement called for services and events that took place in Nevada. First, Plaintiff's SuperLite trucks, that the Defendants agreed to assist with the development and promotion of, were built at Speed Technologies in Reno, Nevada, just like all of Plaintiff's trucks. **Exhibit 18**. The manufacturing of the SuperLite truck included materials the Defendants provided. For example, on or about January 29, 2009, Defendants arranged for their "vinyl guys" to come out to Plaintiff's business in Reno for three days to train Plaintiff's employees how to install the Speed Technologies/Bully Dog truck wraps the Defendants provided for the upcoming season. See Email from Mike DeFord to Kevin Singleton, dated January 29, 2009, attached hereto as **Exhibit 27**. Secondly, Plaintiff's racing team sponsored by the Defendants was located in Reno, which practiced and prepared for the 2009 racing season in Reno. Third, the Defendants' obligations under the contract, such as providing custom tuning, promotions, giveaways, hospitality tents, etc., were all to be provided at the actual races, a large number of which were held in Nevada, as well as the 2009 SEMA Show. See **Exhibits 18 and 26**.

The services the Defendants were to perform under the Agreement centered around Plaintiff's inclusion and participation in the 2009 LOORRS, which scheduled two of its six races in Nevada: (1) the April 4-5, 2009, race at Primm Valley Motorsports Complex, in Primm, Nevada; and (2) the November 14-15, 2009, race at Primm Valley Motorsports Complex, in Primm, Nevada. See *Lucas Oil American Off-Road Series Announces 2009 Schedule*, attached hereto as **Exhibit 28**. At the April 4-5, 2009, Primm, Nevada, "[t]he factory Bully Dog/Speed Technologies team provided the best results that Bully Dog has experienced in off road racing." See Speed Technologies' Press Release, *Bully Dog Rocks Lucas Oil Off Road Racing Series With SuperLite At Primm, dated April 7, 2009*, attached hereto as **Exhibit 29**.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

75803.1

In between the November race, Defendants attended the SEMA Show in Las Vegas, Nevada, in which they won the award for "Best New Interior Accessory Product. *Supra*. In addition to the two LOORRS' Nevada races, Plaintiff's Speed Technologies/Bully Dog branded SuperLite truck raced in another Primm, Nevada, event in 2009; the Best of the Desert, Terrible's 250 desert race. See *The Speed Technologies/Bully Dog team charges hard at the TT250*, dated April 20, 2009, attached hereto as **Exhibit 30**. "After an amazing start to the Lucas Oil Off Road Race Series in Primm, NV, the Speed Technologies/Bully Dog Race Team rolled back into Primm; this time for the Best of the Desert Terrible's 250 desert race." Id.

In fact, the Defendants were the title sponsor of a major television series for the 2009 Best of the Desert series, called the ***Bully Dog Best in the Desert TV***. See *Best in the Desert Racing Lands Two Major Networks Fox Sports, Outdoor Channel to Air 2009 Races Bully Dog, Torchmate Ink Sponsor Deals*, attached hereto as **Exhibit 31** (emphasis added). Defendants attended all of the 2009 LOORRS and Desert races, at which they were obligated to perform various services pursuant to the Agreement. See **Exhibits 18** and **26**. Specifically, Mike DeFord and his assistants would arrive at these events with a customized Bully Dog's trailer, which they would set up at the races (along with a booth) on what is known as "vendor row." **Exhibit 18**. The Defendants would have Bully Dog displays, giveaways, and a number of additional promotions related and unrelated to the Agreement. Most notably, the Defendants would conduct "data gathering" at the events, including all of the Nevada events, in which they would solicit business by conducting data and beta tests on customers vehicles, as well conduct promotions and various displays. **Exhibit 18.**

Furthermore, Fox Sports aired "all five of the Bully Dog Best in the Desert TV car and truck races in 2009," **four of the five which took place in Nevada**: (1) *Terrible's 250* in Primm, Nevada; (2) the *Vegas to Reno, The Long Way*; (3) *Bilek Racing Silver State 300,* in Mesquite, Nevada; and (4) *Henderson Fabtech Desert Classic*, in Henderson, Nevada. See **Exhibit 31**. The "2009 Best in the Desert television package reach[ed] more than 154 million households." Id. Notably, the Defendants' "*Bully Dog Best in the Desert TV*" series began with "coverage of the '*TSCO Vegas to Reno the Long Way Race*,'" a race that literally starts in Las Vegas and ends more

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

75803.1

than 500 miles later in Reno, Nevada.  <u>See</u> *Sopwith Motorsports and Bully Dog Best in Desert TV Announce Enhanced Program Format for the 2009 Winter Season*, dated August 14, 2009, attached hereto as **Exhibit 32**.

In addition to being the Best of the Desert's title sponsor, Defendants also were involved with radio coverage for Las Vegas to Reno race.  <u>See</u> *TORR Goes back to Las Vegas for the Bully Dog Vegas to Reno Special Wed Aug 19!!!*, attached hereto as **Exhibit 33**.  In fact, Mike DeFord co-hosted the radio show, which included guest interviews with both Plaintiff's Kevin Singleton and Chuck Dempsey.  <u>Id.</u>  This radio special event for the Las Vegas to Reno race, sponsored by Defendants and co-hosted by Mike DeFord, also took place in Las Vegas, at the Sunset Station Hotel & Casino.  <u>Id.</u>

Similarly, Defendants also filmed a commercial with Plaintiff in Nevada, that advertised the Defendants' products installed in the Plaintiff's vehicles.  <u>See</u> Emails from Mike DeFord to Kevin Singleton, dated February 11, and February 19, 2009, attached hereto as **Exhibit 34** ("The thought is to film it at Primm [Nevada] . . . [t]he entire commercial will feature the Speed Technologies team").  The commercial - available at http://www.youtube.com/watch?v=XNZz44O43e4 - starts out with the words across the bottom of the screen, "**SOMEWHERE IN THE NEVADA DESERT**."  <u>See</u> Speed Technologies/Bully Dog Technologies Off-Road Television Commercial, attached hereto as **Exhibit 35**.

The commercial featured a Speed Technologies/Bully Dog branded "Class 1 desert off-road racing buggy blasting through the desert at a high rate of speed."  <u>Id.</u>  "Other features include various Speed Technologies / Bully Dog Technologies trucks and the semi that can be seen at such races as the SCORE Baja 100, Lucas Oil Off Road Racing Series (LOORRS) and the Best in The Desert Vegas To Reno as well as other motorsports events."  <u>Id.</u>  The commercial ends by stating, "Bully Dog, high performance tuning race tested to increase power and fuel economy in gas and diesel street vehicles," along with a picture of the Defendants' logo with the words under it "#1 IN PERFORMANCE," and its website, www.BullyDog.com.  <u>Id.</u>

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

75803.1

Throughout the Agreement, Defendants sent Plaintiff invoices at its business in Reno, Nevada, which the Plaintiff paid. See **Exhibit 23**. After Plaintiff raised issues about Defendants' performance under the Agreement, the met at the MGM Grand Hotel and Casino in Las Vegas, Nevada, in early 2010. **Exhibit 18**. Daryl Klassen attended the Las Vegas meeting on behalf of the Defendants, while John Harrah, Holly Harrah, Chuck Dempsey, and myself attended the meeting on behalf of the Plaintiff.

## III.   DISCUSSION

### A.   Legal Standard Governing Defendants' FRCP 12(b)(2) Motion

The extent of a district court's inquiry on a FRCP 12(b)(2) motion is determined by how the motion is supported. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138 (1st Cir. 1995). If "the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" Schwarzenegger v. Fred Martin Co., 374 F.3d 797, 800 (9th Cir. 2004) (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)); see also Boschetto v. Hansing, 539 F.3d 1011, 1014 (9th Cir. 2008) (If the motion rests on the pleadings alone, or affidavits and a cold record, the court will hold the plaintiff to merely a prima facie showing of the jurisdictional facts); Firouszabadi v. First Judicial District Court, 110 Nev. 1348, 1351, 885 P.2d 616, 618 (1994) ("Where, as here, the jurisdictional issue is decided without a fully evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdiction").[4]

The prima facie standard means the Plaintiff "'***need only demonstrate facts that if true would support jurisdiction over the defendant***.'" Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129-1134 (9th Cir. 2003) (emphasis added) (quoting Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)). The court's sole inquiry is "whether [the plaintiff's]

---

[4] If the court orders an evidentiary hearing, the plaintiff may be required to establish personal jurisdiction by a preponderance of the evidence. See Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782-83 (7th Cir. 2003).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

75803.1

pleadings and affidavits make a prima facie showing of personal jurisdiction.'" Schwarzenegger, 374 F.3d at 800 (internal citations omitted); see also Romak USA, Inc., v. Rich & Rich Co., 384 F.3d 979, 983 (8th Cir. 2004) ("to defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction, *and may do so by affidavits, exhibits, or other evidence*.") (emphasis added) (internal citations omitted). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true.'" Id. Lastly, "conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." Id.

Plaintiff has set forth facts that strongly support jurisdiction over the Defendants. Furthermore, while the Defendants hollowly dispute the allegations in Plaintiff's complaint regarding the Defendants' business in Nevada, Plaintiff's allegations regarding the Defendants' trips to Nevada in 2008 through 2010 are uncontroverted. This, coupled with the exhibits and affidavits attached hereto unequivocally constitute a prima facie showing of personal jurisdiction.

However, should this Court wish to conduct an evidentiary hearing for the Plaintiff to further prove jurisdiction, Plaintiff requests this Court grant it leave to conduct discovery on the issue of personal jurisdiction prior to any such hearing. See Doe v. Unocal Corp., 248 F.3d 915, 921 (9th Cir. 2001) (stating that, generally, discovery is available to aid the pleader in establishing the existence of personal jurisdiction). If necessary, Plaintiff has prepared a motion to conduct this discovery, which includes interrogatories and requests for production of documents at a minimum. U.S. v. Swiss American Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001) (a district court may grant limited jurisdictional discovery before ruling on a Rule 12(b)(2) motion to dismiss).

**B.     Defendants' Are Subject to Both General and Specific Personal Jurisdiction in Nevada**

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." Yahoo! Inc., v. La Ligue Contre Le Racime Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006); see also FRCP 4(k)(1)(A). "Nevada's long-arm statute, NRS 14.065, reaches the limits of due process set by the

United States Constitution." Baker v. Dist. Ct., 116 Nev. 527, 531, 999 P.2d 1020, 1023 (2000) (citing Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1319-20 (9th Cir. 1998). Hence, because Nevada's "long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." Yahoo! Inc., 433 F.3d at 1205 ("a court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'").

"Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction." Panavision Int'l, 141 F.3d at1320. "General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" Id. The defendant's contacts with the forum state need not be related to the Plaintiff's claim for purposes of general jurisdiction; rather, "[a] court may maintain general jurisdiction over a nonresident defendant, based on the defendant's continuous and systematic general business contacts with the forum state." Trujillo v. Williams, 465 F.3d 1210, 1218 fn.7 (10th Cir. 2006). Specific personal jurisdiction, on the other hand, exists "where the defendant purposefully avails itself of the privilege of serving the market in the forum or of enjoying the protection of the laws of the forum, and the cause of action arises from that purposeful contact with the forum." Budget Rent-A-Car v. Dist. Ct., 108 Nev. 483, 487, 835 P.2d 17, 20 (1992).

### (i).    Defendants Are Subject to General Personal Jurisdiction

The Defendants' activities in Nevada are substantial, continuous, and systematic. The Defendants' website alone confers this Court with personal jurisdiction over the Defendants. The website directs individuals in Nevada to one of their Nevada dealers, which are Nevada businesses designated by the Defendants as local Bully Dog dealers; in fact, a cursory review of their website reveals approximately 40 Nevada dealers. **Exhibits 5-7**. These dealers, some of which are labeled "preferred dealers," are listed based on the information (zip code and mileage) a customer enters into the website and includes the dealers' address, phone number, and in some cases, a photograph or direct link to the store carrying the Defendants' products. Id. Thus, while simply posting

1   information on a website that is accessible nationwide is generally insufficient to confer personal

2   jurisdiction, where as here, the Defendants have knowingly made an effort to market its products

3   and/or contract with businesses in the forum state to do the same, personal jurisdiction is proper.

4   See e.g., CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996).

5

6          Not only can an individual in Nevada purchase products from the Defendants' website,

7   they can simply stop at one of the Defendants' Nevada dealers or preferred dealers to purchase

8   and/or order the Defendants' products. See **Exhibit 7**. Defendants admit that they do business in

9   Nevada, however, they simply state, without any evidentiary support, that its sales in Nevada are

10  minor. Regardless, the nature and quality of their commercial activity in Nevada are extensive.

11  CompuServe, Inc., 89 F.3d 1257. Furthermore, Defendants argue that they are not subject to

12  general personal jurisdiction because, despite the allegations in Plaintiff's complaint that "Bully

13  Dog does business within the State of Nevada . . . . Bully Dog in fact does not do any direct

14  business in Nevada." Motion to Dismiss, at p. 12. Defendants' arguments are severely misplaced

15  and entirely without merit as Defendants' contacts with Nevada are substantial and continuous.

16

17          A quick trip to Summit Racing in Sparks, Nevada, or any other Bully Dog dealer in

18  Nevada, demonstrates the Defendants are directly conducting business with the state of Nevada.

19  The Nevada Bully Dog dealers listed on the Defendants' website have an agreement and/or a

20  license with the Defendants to be Nevada designated Bully Dog distributors, who stock, sell or can

21  specially order the Defendants' products from a catalog they receive from the Defendants. In fact,

22  the Defendants' website has a dealer "Login" section, which requires a username and password to

23  access. **Exhibits 5-6**. Moreover, preferred Bully Dog dealers, such as Sin City Performance Inc.,

24  have an agreement with, or permission by, the Defendants to do warranty work on the Defendants'

25  products and conduct automotive testing using the Defendants' "dyno" product. See **Exhibit 5-6**;

26  see also http://sincityperformance.net/. Consequently, Defendants are intentionally and directly

27  doing business with the state of Nevada.

28          Accordingly, Defendants' claim that its "website is not interactive," and that they "do not

do business in the State of Nevada, other than if an individual looks at our website and purchases

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

75803.1

one of our products through our website," is unpersuasive. A "passive Web site" is one "that does little more than make information available to those who are interested in it," which alone is insufficient to confer personal jurisdiction. Zippo Manufacturing Co., v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). However, where a "defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." Id. (citing Compuserve, Inc. v. Patterson, 89 F.3d 1257 (6th Cir. 1996)). This case is clearly more indicative of the latter, and exercising personal jurisdiction over the Defendants based on their continuous contacts with Nevada is entirely reasonable.

Additionally, Defendants are in Nevada several times a year for conventions, LOORRS, the SEMA Show, and/or other events that they either sponsor or hold in Nevada. In fact, Mike DeFord was in Nevada so often while he worked for the Defendants that he stated "I spend way to much time in Vegas for work, really need to come enjoy it on my own time" on his "Facebook" page on October 16, 2010. See Facebook page of Mike DeFord attached hereto as **Exhibit 36**. At these events, the Defendants must register and pay fees, and therefore, have undeniably availed themselves to the privileges and protections of Nevada. For example, at the SEMA Show in Las Vegas, the Defendants have to register and pay fees to set up a Bully Dog information and display booth, which markets their current and upcoming products. **Exhibit 8**.

Moreover, Defendants sponsor various races and race series that annually hold a number of events in Nevada, at which the Defendants host events, parties and promotions. See e.g., **Exhibits 13, 14, 15, and 18**. In fact, just last year the Defendants entered into a sponsorship/services agreement with Menzies Motorsports, LLC ("Menzies"),[5] another prominent Nevada business/racing team: "With the Lucas Oil short course series just getting ready to kick off their 2010 season, two of the sports biggest names, Menzies Motorsports and Bully Dog, are proud to announce they have teamed up." See *Bully Dog and Menzies Motorsports team up and plan to dominate the competition*, dated February 26, 2010, attached hereto as **Exhibit 38**. In entering

---

[5] Menzies Motorsports, LLC, is a Nevada limited liability company. See Secretary of State, Menzies Motorsports, LLC, attached hereto as **Exhibit 37**.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

into this agreement with a Nevada entity, the Defendants' then existing public relations manager, Mike DeFord, stated that "[Menzies] and I started talking about this back in 2008 . . . . [i]t is a great fit for our company . . . . **[i]t was Primm [Nevada] last year,** after they had a rough Saturday that their passion really made its mark on me; **I knew that we [Bully Dog] had the same goals and thoughts on how to achieve those goals.**" Id. (emphasis added).

Consequently, this Court should find that the Defendants are subject to general personal jurisdiction in Nevada.

### (i). Defendants Are Subject to Specific Personal Jurisdiction

The Ninth Circuit Court of Appeals uses a three-pong test to analyze whether a defendant is subjected to specific personal jurisdiction: (1) "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." Yahoo! Inc., 433 F.3d at 1205. The burden of proof rests with the plaintiff to satisfy the first two prongs of this test. If this burden is satisfied, the burden then shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

The Ninth Circuit has repeatedly confirmed that "purposeful availment" comes in two forms: (1) the defendant can either "purposefully avail" himself of the privilege of conducting activities in the forum, or (2) he can "purposefully direct" his activities toward the forum. See Yahoo!, 433 F.3d at 1206; see also Pebble Beach Company v. Caddy, ___ F.3d ___, 2006 WL 1897091, at 3 (9th Cir. 2006) (citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir.2004)). "Purposeful availment" cases generally sound in contract and are typically guided by the reasoning set forth in Hanson v. Denckla, 357 U.S. 235, 253 (1958) (jurisdiction is proper if the there is "some act by which the defendant purposefully avails itself of the privilege of

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

75803.1

conducting activities within the forum State").  "Purposeful direction" cases generally sound in tort and are typically guided by the analysis set forth in Calder v. Jones, 465 U.S. 783 (1984).  See Schwarzenegger, 374 F.3d at 802 (discussing the general theories of purposeful availment and purposeful direction).  This case satisfies the standard for both "purposeful availment" and "purposeful direction."

Here, in addition to generally directing their activities at Nevada as set forth above, the Defendants specifically and purposefully entered into a contract with a Nevada business and resident,[6] in which they sponsored a Nevada racing-team and a racing truck (the SuperLite) which was built in Nevada.  **Exhibits 18** and **26**.  The Defendants came to Plaintiff's business in Reno, Nevada, at the end of 2008 to propose the Agreement and sponsorship of Speed Tech's racing team and the SuperLite, in addition to at least three other trips to Reno in connection with the Agreement.  Id.  These acts, coupled with the Defendants actions throughout the Agreement's performance, undoubtedly demonstrate that they have availed themselves to the privilege of conducting activities in the state of Nevada.  Hanson, 357 U.S. at 253.

A number of the services under the Agreement were to be performed in Nevada, which forms the basis of Plaintiff's breach of contract claims.  For starters, the SuperLite truck that the Defendants sponsored was to be built in Nevada and raced in primarily three off-road racing series: (1) LOORRS; (2) Best in the Desert; and (3) the SCORE Desert Racing Series.  **Exhibits 18** and **26**.  LOORRS' first race of the season, April 4-5, 2009, took place in Primm, Nevada, at which the Defendants were obligated to provide, among other things, "Track Time for Practice, Qualifying & Race," "Pit Space for Arrive & Drive/ Speed Tech. compound," "3 Track Days in Primm [Nevada]," "Data Collection/Lead generation," and "TV time within the Race Series Show featuring SuperLite."  See **Exhibit 26**.  In fact, Plaintiff paid the Defendants $222,000 under the Agreement for "Staff & Travel to complete all items on [the Agreement]," which also included

---

[6] Pursuant to 28 U.S.C. § 1332, Speed Tech is a Nevada resident (as well as a resident of Delaware) because its principal place of business is in Nevada.  See **Exhibit 18**, at pp. 1-2.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

75803.1

creating Plaintiff's website and its "E-Commerce" component that would sell Plaintiff's products, branded with the Defendants' name and logo.  Id.

LOORRS' second race of the season was also in Primm, Nevada, which was immediately followed by the 2009 SEMA Show.  **Exhibits 26, 31**.  Defendants attended both, pursuant to the Agreement as well as their own accord, setting up a booths and displays to market and offer their services.  Id.  In fact, pursuant to the Agreement Plaintiff paid the Defendants $17,500 for a "Display at 2009 SEMA Show," that was supposed to include a "10 x 20 booth & Vehicle placement."  **Exhibit 26**.  While the Defendants did not fully perform most of their obligations, they repeatedly sent invoices to Plaintiff in Reno, Nevada, seeking hundreds of thousands of dollars under the Agreement.  **Exhibit 23**.

In addition to being obligated to perform these services in Nevada, Defendants were supposed to film a number of commercials.  **Exhibit 26**.  The one commercial the Defendants did film took place in Nevada, in which the Defendants marketed both the Plaintiff's and the Defendants' products.  **Exhibits 32-36**.  Not only were the Defendants obligated to perform similar services at the Best in the Desert and SCORE Desert racing series, the vast majority of which took place in Nevada, the Defendants were the title sponsor of a national television show covering the Best in the Desert series races in Primm, Las Vegas, Reno, Mesquite, and Henderson, Nevada.  Id.  Defendants even sponsored and co-hosted a radio show covering the well-known Vegas to Reno race.  **Exhibit 34**.  Thus, Defendants' actions are the quintessential purposeful availment of seeking the privileges of conducting activities within the forum state, thereby invoking the benefits and protections of Nevada's laws.  See Schwarzenegger, 374 F.3d at 803.

The purposeful direction test is similarly satisfied.  The Defendants represented that the Plaintiff would not be able to compete in the 2009 LOORRS without entering into the Agreement, which forms the basis of Defendants fraud and misrepresentation claims.  See **Exhibit 18**; see also Complaint, at pp. 3-4 (Defendants represented that "Speed Technologies' SuperLite would not be able to get into LOORRS without Bully Dog's participation through the sponsorship and services agreement.").  The Defendants' fraud was expressly aimed at Plaintiff's Nevada business, in

which they made a series of misrepresentations to Plaintiff in order to induce them into paying over a million dollars for expenses that simply did not exist and/or services they had no intent on performing.  Accordingly, Plaintiff's claims undeniably arise out of the Defendants purposeful availment and purposeful direction to Nevada.

Lastly, Defendants' argument that exercising personal jurisdiction over the Defendants in Nevada would be unreasonable is also without merit.  As set forth above, because Plaintiff has met its burden of demonstrating that the Defendants are subject to both general and specific personal jurisdiction, the burden then shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).  Nothing in Defendants' motion constitutes such a compelling case.  Plaintiff's business is located in Reno, Nevada, and Nevada has an interest in protecting its businesses from the actions complained of in Plaintiff's complaint. Moreover, there is no alternative forum despite Defendants' specious claim that Plaintiff would be somehow subjected to personal jurisdiction in Idaho, which it has never been to and directs no business activities towards.  Rather, the witnesses, judicial economy, and convenience, coupled with the Defendants' substantial contacts and purposeful availment towards Nevada, render exercising personal jurisdiction over the Defendants in Nevada entirely reasonable.

///

///

///

///

///

///

**IV.   CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that this Court deny the Defendants' motion to dismiss for lack of personal jurisdiction.

DATED this _11th_ day of _April_, 2011.

LEWIS AND ROCA LLP

By _____
E. LEIF REID
DARREN J. LEMIEUX
50 West Liberty Street, Suite 410
Reno, Nevada 89501
*Attorneys for Plaintiff*

1

2

**CERTIFICATE OF SERVICE**

3    I hereby certify that on this 11th day of April, 2011, I electronically filed the foregoing

4  **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK**

5  **OF PERSONAL JURISDICTION** with the Clerk of the Court for the United States District

6  Court for the District of Nevada by using the CM/ECF system.

7    Participants in the case who are registered CM/ECF users will be served by the CM/ECF

8  system.

9    I further certify that some of the participants in the case are not registered CM/ECF users. I have

10  mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third

11  party for commercial carrier for delivery within 3 calendar days to the following non-CM/ECF

12  participants: **NONE.**

13

14

15

    /s/ Carole M. Davis
an employee of Lewis and Roca LLP

16  50 West Liberty St., Suite 410
Reno, Nevada 85901

17  (775) 321-3418
cdavis@lrlaw.com

18

19

20

21

22

23

24

25

26

27

28

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

75803.1