```
___ FILED          ___ RECEIVED
___ ENTERED        ___ SERVED ON
                   COUNSEL/PARTIES OF RECORD

        AUG 0 5 2011

     CLERK US DISTRICT COURT
      DISTRICT OF NEVADA
BY: _____ DEPUTY
```

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SPEED TECHNOLOGIES, LLC, a Delaware limited liability company, | ) ) ) |
| Plaintiff, | ) 03:11-CV-00180-LRH-RAM ) ) |
| v. | ) ORDER ) |
| BULLY DOG SALES & DISTRIBUTION, LLC, an Idaho limited liability company; BULLY DOG TECHNOLOGIES, LLC, an Idaho limited liability company; DOES 1-10; and ROE CORPORATIONS A-Z, inclusive, | ) ) ) ) ) ) |
| Defendants. | ) ) |

Before the court is Defendants Bully Dog Sales & Distribution, LLC and Bully Dog Technologies, LLC's (collectively "Bully Dog") Motion to Dismiss for Lack of Personal Jurisdiction. Doc. # 7[1]. Plaintiff Speed Technologies, LLC ("Speed Technologies") filed an opposition (Doc. # 13) to which Bully Dog replied (Doc. # 17).

Also before the court is Bully Dog's Motion to Strike Exhibits 1-17 and 19-30 to Speed Technologies' Opposition Memorandum. Doc. # 16. Speed Technologies filed an opposition (Doc. # 24) to which Bully Dog replied (Doc. # 27).

///

---

[1] Refers to the court's docket number.

I.  **Facts and Procedural History**

This action arises out of the execution and performance of a contract, referred to as the "Sponsorship and Services Agreement," between Speed Technologies and Bully Dog. Speed Technologies is a Delaware corporation with its headquarters and principle place of business in Reno, Nevada. Speed Technologies manufactures, sells, repairs, and rents off-road motorsport racing trucks and motorcycles in Reno and has a professional motocross racing team that competes in a number of high-profile races and racing series.

Bully Dog is an Idaho corporation with its principle place of business in Aberdeen, Idaho. Bully Dog manufactures and sells performance-enhancing products for diesel pickups and gasoline-powered vehicles and sponsors and supports off-road racing teams and series, including the Lucas Oil Off Road Racing Series ("LOORRS").

In late 2008, Mike DeFord ("DeFord"), then marketing and public relations manager for Bully Dog, visited Kevin Singleton ("Singleton"), general manager of Speed Technologies, to present Bully Dog's proposal for a Sponsorship and Services Agreement for the 2009 LOORRS racing season. *See* Doc. # 13, Exh. 18, Singleton Depo. at ¶ 5. On January 16, 2009, and January 18, 2009, respectively, Speed Technologies and Bully Dog executed the Sponsorship and Services Agreement. *See* Doc. # 13, Exh. 26.

On February 1, 2011, Speed Technologies filed a complaint against Bully Dog alleging eight claims for relief: (1) fraud in the inducement; (2) fraudulent misrepresentation; (3) breach of contract; (4) contractual breach of the implied covenant of good faith and fair dealing; (5) tortious breach of the implied covenant of good faith and fair dealing; (6) breach of fiduciary duty; (7) constructive fraud; and (8) conversion. Doc. # 1-2, ¶¶ 38-84. In response, Bully Dog filed the present Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Doc. # 7.

///

2

## II. Legal Standard

Where a defendant challenges the exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where, as here, the court receives only written materials, the plaintiff need only make a *prima facie* showing through its pleadings and affidavits that the exercise of personal jurisdiction over the defendant is proper. *Id.* Although a plaintiff cannot simply rest on the bare allegations of its complaint, the uncontroverted allegations in the plaintiff's complaint are taken as true, and conflicts between the facts contained in the parties' affidavits are resolved in the plaintiff's favor. *Id.*

## III. Discussion

To establish personal jurisdiction over nonresident Bully Dog, Bully Dog must have sufficient "minimum contacts with Nevada 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction over a nonresident defendant may be either general or specific. *Helicopteros Nationales de Columbia S.A. v. Hall*, 466 U.S. 408, 414 nn. 8-9 (1984).

In its Motion to Dismiss, Bully Dog contends that it is not a resident of Nevada and does not have sufficient minimum contacts with Nevada for the court to exercise personal jurisdiction. *See* Doc. # 7. In opposition, Speed Technologies argues that Bully Dog is subject to both general and specific personal jurisdiction. The court shall address each issue below.

### A. General Jurisdiction

For a court to exercise general jurisdiction over a defendant, that defendant's activities in the forum must be either "substantial" or "continuous and systematic," such that the defendant's activities approach a "physical presence" in the forum. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). The Ninth Circuit differentiates between doing business

3

1  *in* a state and doing business *with* a state, the latter generally not giving rise to general jurisdiction.
2  *Id.* (emphasis added). To determine if a defendant is doing business *in* the forum state, thereby
3  warranting the exercise of general jurisdiction over a defendant, the court examines the frequency
4  and volume of the defendant's transactions with the forum's residents. *See Gorman v. Ameritrade*
5  *Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002) (applying the sliding-scale test used in *Zippo*
6  *Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)). Factors courts consider
7  include whether the defendant makes sales in the forum, solicits or engages in regular business in
8  the forum, serves the forum's markets, designates an agent for service of process in the forum,
9  holds a licence in the forum, or is incorporated in the forum. *See Hirsch v. Blue Cross, Blue Shield*
10 *of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986).

11       Here, the court finds that Bully Dog's contacts with Nevada fall short of either the
12 "substantial" or "continuous and systematic" contacts that have previously been held to constitute
13 sufficient presence in a forum. *See e.g., Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 (9th
14 Cir. 1984) (finding that solicitation of a contract, physical presence in the forum on occasion,
15 commercial transactions with residents of the forum, and telephone and written correspondence
16 with individuals in the forum were insufficient activities to support general jurisdiction). First, the
17 court notes that Bully Dog's website, on which it markets and sells its products and guides users to
18 product dealers in the forum, is insufficient to support general jurisdiction. *See Coremetrics, Inc. v.*
19 *Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1019 (N.D. Cal. 2005) (finding that the maintenance
20 of an interactive website, which is accessible to customers in the forum is not sufficient by itself to
21 establish general jurisdiction). Second, Bully Dog's occasional merchandise sales to Nevada
22 residents via its website cannot be characterized as doing substantial business on a continuous and
23 systematic basis. *See Bancroft and Masters*, 223 F.3d at 1086 (engaging in commerce with
24 residents of the forum state is not alone the type of activity that approximates physical presence).
25 Third, Bully Dog's annual attendance at the Specialty Equipment and Marketing Association
26

4

("SEMA") trade show in Las Vegas does not give rise to the level of substantial or continuous contact necessary to support general jurisdiction. *See Congoleum Corp. v. DLW Aktiengesellschaf,* 729 F.2d 1240, 1242 (9th Cir. 1984) (attending trade shows and sales meetings in the forum state is not sufficient contact to assert general jurisdiction). Finally, the court notes that Bully Dog does not have a designated agent for service of process in Nevada, does not hold a business license in the state, and is not incorporated there. Therefore, the court concludes that the exercise of general jurisdiction over Bully Dog is not warranted.

**B. Specific Jurisdiction**

Although the court finds that Bully Dog is not subject to general jurisdiction, the court may still exercise specific personal jurisdiction over Bully Dog if the case arises out of Bully Dog's forum-related contacts. *Bancroft,* 223 F.3d at 1086. A three-part test applies to determine whether the exercise of specific jurisdiction satisfies constitutional due process: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum; (2) the claim must be one which arises out of, or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128 (9th Cir. 2010). The plaintiff bears the burden of establishing the first two prongs, and if successful, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-78 (1985)).

Although the term "purposeful availment" is often used to identify the first prong, it encompasses both purposeful availment and purposeful direction, which are two distinct concepts. *Id.* Purposeful availment applies in cases sounding in contract and is established by evidence of the defendant's actions in the forum, such as executing or performing a contract. *Id.* By contrast,

purposeful direction applies in cases sounding in tort and is established by evidence of the defendant's activities outside the forum state that are directed at the forum. *Id.* at 803. Where, as here, an action involves tort claims that arise out of the parties' contractual relationship, the Ninth Circuit applies the purposeful availment test for both contract and tort claims. *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).

### 1. **Purposeful Availment**

It is well-settled in the Ninth Circuit that a contract alone does not automatically establish the requisite minimum contacts for specific jurisdiction. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). Prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing are relevant considerations. *Burger King*, 471 U.S. at 479. Furthermore, the economic impact of the contractual relationship on the forum state is of particular relevance. *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (citing *Burger King*, 471 U.S. at 475).

Here, the court finds that Bully Dog's contacts with Nevada are sufficient to support specific jurisdiction. Bully Dog's activities clearly demonstrate that it purposefully availed itself of the privilege of doing business in Nevada. First, Bully Dog solicited business in Nevada by approaching Speed Technologies regarding the proposed Sponsorship and Services Agreement. *See* Doc. # 13, Exh. 18, Singleton Depo. at ¶ 5. In doing so, Bully Dog actively promoted its participation in the Nevada market.

Second, the Sponsorship and Services Agreement contemplated substantial performance in Nevada. Pursuant to the agreement, Bully Dog was obligated to perform various services, including giveaway promotions, merchandise production and sales, television and radio spots, and various other marketing and advertising services, in connection with several races throughout Nevada. *See* Doc. # 13, Exh. 18, Singleton Depo. at ¶ 11. *Id.* Moreover, Bully Dog attended the annual SEMA trade show in Las Vegas to market their products in accordance with the

Sponsorship and Services Agreement. *Id.* at ¶ 12.

Third, Bully Dog was present in Nevada for several status meetings with Speed Technologies. In addition to the initial meeting regarding formation of the Sponsorship and Services Agreement, DeFord visited Las Vegas on two additional occasions to discuss performance of the Sponsorship and Services Agreement. *See* Doc. # 13, Exh. 18, Singleton Depo. at ¶ 11. Moreover, in early 2010, Daryl Klassen ("Klassen"), now manager of Bully Dog, met with representatives from Speed Technologies in Las Vegas to discuss Bully Dog's representations and performance under the contract. *Id.* at ¶ 13. For all of the aforementioned reasons, the court finds that Bully Dog purposefully availed itself of the privilege of conducting business in Nevada.

### 2. Arising Out of Forum-Related Activities

Having found purposeful availment, the court must examine whether Speed Technologies' claims arise out of, or relate to Bully Dog's forum-related activities. The Ninth Circuit applies a "but for" test to determine whether a particular claim arises out of forum-related activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, but for the Sponsorship and Services Agreement entered into and performed in Nevada, Speed Technologies would not have suffered the harms alleged in the complaint. Accordingly, the court finds that Speed Technologies' claims arise out of, and relate to Bully Dog's forum-related activities.

### 3. Reasonableness

Finding that Speed Technologies' satisfies the first two elements for specific jurisdiction, the court presumes that the exercise of specific jurisdiction is reasonable, and the burden shifts to the defendant to "present a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. In evaluating unreasonableness, a court considers the following seven factors: (1) the extent of a defendant's purposeful availment; (2) the burden on defendant of appearing in the forum; (3) conflicts between the forum state and defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most

efficient judicial resolution of the controversey; (6) the plaintiff's interest in the forum; and (7) the existence of an alternate forum. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).

Here, the court finds that exercising specific jurisdiction over Bully Dog is reasonable. First, Bully Dog has failed to establish that defending itself in Nevada would impose an unreasonable burden on its ability to defend itself. Bully Dog admits that representatives have traveled to Nevada on numerous occasions for reasons both related and unrelated to this dispute indicating that it would not suffer financial hardship travelling to Nevada. Further, the fact that a greater number of Bully Dog employees may be required to testify at trial does not in and of itself demonstrate that defending itself in this lawsuit would be overly burdensome.

Second, Nevada has an obvious interest in protecting the interests of corporations that reside and conduct business therein, making Nevada an appropriate forum for resolution of this dispute. Moreover, considerations of efficiency and convenience favor resolution of this case in Nevada, as a number of events that gave rise to this lawsuit occurred therein.

Third, Bully Dog fails to establish that an alternative forum is more convenient or appropriate. There is no indication that Speed Technologies ever traveled to Idaho in connection with the Sponsorship and Services Agreement, nor is there any indication that Speed Technologies purposefully availed itself of the privilege of doing business in Idaho. Thus, on balance the court finds that Bully Dog has failed to present a compelling case that the exercise of jurisdiction in this district would be unreasonable. The court therefore concludes that Bully Dog is properly subject to specific personal jurisdiction in this district.

The court finds unpersuasive Bully Dog's argument that Speed Technologies has the burden of establishing personal jurisdiction with respect to each of its claims. *See* Doc. # 17, p. 8. Under the doctrine of pendant personal jurisdiction, a court may assert personal jurisdiction over a defendant "with respect to a claim for which there is no independent basis of personal jurisdiction

so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Because Bully Dog is subject to personal jurisdiction for Speed Technologies' breach of contract claims, the court shall exercise personal jurisdiction over Bully Dog for all claims.

### IV.  Motion to Strike

Pursuant to Fed. R. Civ. P. 12(f), a court may strike any pleading for redundant, immaterial, impertinent, or scandalous material. The court has reviewed the documents and pleadings on file and finds that Bully Dog's Motion to Strike is without merit. Only where the allegations in the pleading have no possible relation to the controversy and may cause prejudice to one of the parties will a court grant a motion to strike. *Travelers Cas. & Sur. Co. of Am. v. Dunmore*, 2010 WL 5200940, *3 (E.D. Cal. 2010). Here, Bully Dog has made no such showing. Furthermore, where, as here, the challenged material raises an issue of fact, the motion to strike shall be denied, "leaving an assessment of the sufficiency of the allegations for adjudication on the merits." *Id.* (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir.2010)). Accordingly, the court shall deny Bully Dog's Motion to Strike Exhibits 1-17 and 19-30.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2) (Doc. # 7) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Exhibits 1-17 and 19-30 to Plaintiff's Opposition (Doc. # 16) is DENIED.

IT IS SO ORDERED.

DATED this 4 day of August, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE